## WOOD v. NATIONAL FARMERS UNION AUTOMOBILE & CASUALTY CO.

Civ. 2520.

United States District Court
D. Colorado.
July 28, 1953.

516

H. Vance Austin, Sterling, Colo., Mansur Tinsley, Lakewood, Colo., for plaintiff.

Lowell White and Walter A. Steele, Denver, Colo., for defendant.

Before the Honorable WILLIS W. RITTER, United States District Judge for the District of Utah, assigned.

RITTER, District Judge.

At one time the National Farmers Union acted as an agent for the American Motorists Insurance Company of Chicago and sold insurance in that company, and for a number of years E. E. Cronquist of Longmont, Colorado, was an agent of the National Farmers Union and sold insurance around Fleming, Colorado, for the National Farmers Union in the American Motorists Insurance Company of Chicago.

Some time prior to July 1947 the National Farmers Union organized its own automobile casualty insurance company, and that company is the defendant in this action—the National Farmers Union Automobile and Casualty Company.

Now, prior to the events leading up to this lawsuit the plaintiff, Orton Wood, had bought automobile casualty insurance from the same agent and from the same company for many years. The agent was E. E. Cronquist, who sold insurance to Orton Wood for the National Farmers Union in the American Motorists Insurance Company of Chicago. On the first of July 1947 the plaintiff, Orton Wood, held such a policy in the American Motorists Insurance Company, which E. E. Cronquist had sold him.

After the National Farmers Union organized its own company, namely, the defendant in this action, the defendant sent out solicitations or invitations to policyholders in American Motorists Insurance Company to insure in the defendant company. Those letters of solicitation were

sent by the defendant, with notices of premiums due, upon renewal of American Motorists policies, to persons to whom National Farmers Union had theretofore sold American Motorists policies. The plaintiff in this case, Orton Wood, was such a person. His policy with American Motorists was to expire on July 21, 1947.

About July first 1947 the defendant sent to the plaintiff Wood a notice of premium due July 21 on his American Motorists policy. At the same time defendant sent plaintiff Wood a letter soliciting his membership and insurance in defendant company. That letter, Exhibit 11, is on a letterhead, at the top of which the words, "National Farmers Union," prominently appear; and in this opinion that letter is to be reproduced in full.

Plaintiff's Exhibit 11

"National Farmers Union

"Automobile and Casualty Company

"A Farmers Union Service
"National Office
"3501 East 46th Avenue—Denver 16, Colorado

"Dear Policyholder:

"Premium renewal notice for your present auto insurance is enclosed. Increased rates are now in effect throughout the United States and, so far as we know, by all companies—due to increase in number, violence and cost of accidents. Your present policy, unless renewed, will expire on the date indicated in the notice.

"Now that we have our own company you will almost certainly want it to carry your insurance beginning with this renewal date. To make this easy for you, we are enclosing a premium statement for similar coverages in National Farmers Union Auto and Casualty Company. It provides for 10, 20, and 5 on Public Liability instead of the usual 5, 10, and 5.

"A leaflet explaining the $10.00 for the capital account of your new company is enclosed. The net earnings are returnable to you on a patronage basis. The company has paid-in capital of $250,000 and paid-in surplus of $100,-000, thus giving it great strength and stability. Your new policy will become effective on the date of expiration of your present policy, provided you mail the green premium statement and your remittance on or before that date.

"The Premium Rates Quoted in Your Own Farmers Union Company are on a 'Preferred Risk' Basis. Our Records Show That You are a Preferred Risk, and We Believe You Will Continue to Merit Preferred Rating. You will note that the premiums stated are semiannual, but if you want to pay for a full year you may remit double the premiums specified, plus $10.00 for capital account. This $10.00 is not an expense to you. It is an investment in your own cooperative company—one of the safest and soundest investments you could make. If at a later time you do not currently or prospectively have any vehicles to insure, this investment will be returned to you upon your request approved by the Board of Directors of the Company.

"We are sure you will want to remit promptly for the new policy in National Farmers Union Auto and Casualty Company, so that from now on you will be covered in your own cooperative company, but if for some reason you prefer not to do so you may, of course, remit the premium for your present policy.

"Cooperatively yours,

"C. E. Huff, General Manager
"CEH:jh
"Encl.
"L—No. 3"

The defendant company enclosed with that letter to Wood an "invoice," which is referred to in that letter as follows:

"Now that we have our own company you will almost certainly want it to carry your insurance beginning with this renewal date. To make this easy for you, we are enclosing a premium

statement for similar coverages in National Farmers Union Auto and Casualty Company. It provides for 10, 20, and 5 on Public Liability instead of the usual 5, 10, and 5."

This "invoice" is Exhibit 14. It also will be reproduced in full in this opinion to show both the format and the type of references, which are both important in this case.

Plaintiff's Exhibit 14

"Invoice

"National Farmers Union Auto & Casualty Co.
"3501 East 46th Avenue
"Denver 16, Colo.          3D3–A–1

"In Account With Orton Wood          "Farmers Union Cooperative
"Fleming, Colorado                   Insurances
                                     "Vehicle Insurance
"In longhand: R.M.F.U.               "Division
       "E. E. Cronquist
       "NT–1          57

       "P–11108
       "B–9513"

"13361618                 (See letter)        From 7–21–47 to 1–21–48

| "Policy number Company Vehicle | Policy period | |
|---|---|---|
| "Coverages | Limits of Liability | Premiums |
| "A. Fire, Lightning and Transportation | Actual Cash Value | |
| "B. Windstorm, Earthquake, Explosion, Hail or Water | Actual Cash Value | |
| "C. Theft (Broad Form) | Actual Cash Value | |
| "D. Comprehensive (Includes Fire, Theft, Windstorm and other damages to the automobile, other than collision or upset | Actual Cash Value | |
| "E–1. Collision or Upset | Actual Cash Value Less $ Deductible | |
| "E–2. Collision or Upset | 80% of the first $250 of actual cash value and 100% of the actual cash value in excess of $250 | |
| "F. Property Damage Liability | $5000 each accident | 3.00 |
| "G. Bodily Injury Liability | $10,000 each person; $20,000 each accident | 4.50 |
| "H. Medical Payments (Named Insured——) | $——Each person | |
| "I. Emergency Road Service | $10.00 Each Disablement | |
| "Endorsements | | |
| | "Total Premiums | 7.50 |
| "Capital Account Participation (Participation required only once.) | | $10.00 |
| "Total of Premiums and Capital Account Participation | | 17.50 |

"Terms: Payable on Presentation of Invoice Net Amount Due $——"

As we shall see a little later, Mr. C. L. Lippitt, President of the First National Bank of Fleming, Colorado, Exhibit 13, mistook this "invoice" for what he called "Auto Policy No. 3D3–A–1 PD & BI." A reference to the "invoice" shows at once that "PD" had reference to the property damage, and "BI" refers to bodily injury.

Mr. Lippitt says, in Exhibit 13: "Auto policy No 3D3–A–1 PD & BI Expiring Jan 21st 1948 of Orton Wood, Fleming, Colorado, on 1939 Studebaker."

In July 1947 Orton Wood, the plaintiff, bought a Frazer sedan. That appears in the transcript of the proceedings of June 11, 1951, page 20, in the stipulation. Prior to that time Mr. Wood owned a 1939 Studebaker, which was referred to in the foregoing invoice, Exhibit 14.

On August 5, 1947, Mr. Wood was about to leave on an extended automobile trip. He turned over the foregoing invoice, Exhibit 14, to the President of the bank at Fleming, the First National Bank of Fleming, Colorado, a Mr. C. L. Lippitt, to send to the defendant company in Denver to obtain what Mr. Lippitt calls "coverage" on the new Frazer sedan. Accordingly, the president of the bank, on August 5, 1947, wrote and sent to the defendant company in Denver a letter, which is Exhibit 13, which will be reproduced, letterhead and all, in this opinion.

Plaintiff's Exhibit 13
"The First National Bank
"Capital and Surplus over $40,000.00
"Fleming, Colorado
"C. L. Lippitt, President
"August 5th 1947
"R. L. Swedlund, Cashier
"(Stamped) Aug 6 Rec'd
"National Farmers Union Auto & Casualty Company
"3501 East 46th Avenue
"Denver 16 Colorado
"Gentlemen:

"Enclosed find Auto Policy No 3D3–A–1 PD & BI Expiring Jan 21st 1948 of Orton Wood, Fleming Colorado, on 1939 Studebaker, and Mr. Wood wants this coverage to Cover

1947 Frazer Sedan Model F. 47 Motor No 29186
Mfg Serial No 006458 which he purchased July 1947 used Cost 2,250.00

"Will you please make this endorsement to cease the coverage on the old car and place on the new one, and Mail to Mr. Wood, Fleming Colorado

"Yours very truly,
"(Signed)   C. L. Lippitt
"President"

Together with the foregoing letter, the bank president mailed to the defendant company the "invoice" Exhibit 14. That letter and the enclosures were received by the defendant company in Denver August sixth.

Thereupon, the parties have stipulated. (Transcript of the proceedings of June 11, 1951, pages 21 to 22, and pages 10 to 11)

*Pages 10 to 11*—"The Court: Now, the American never did transfer it onto this other automobile but the Farmers Union did and sent a policy to Cronquist and he sent it to the plaintiff; is that right?

"Mr. White: That's correct.

"The Court: There is still, of course, in that situation the question of the obligation to pay a premium.

"Mr. White: Yes, and that does become the ultimate fact.

"The Court: That's one of them.

"Mr. White: I mean after this other, it resolves itself into a question as to whether he paid the premium. Your honor has analyzed it correctly."

*Pages 20 to 22*—"The Court: * * We'll see if I understand these facts and if I do, whether or not you people can agree to them. * * * (Page 21) That under counter-signature, date of August 8, 1947, National Farmers Union Automobile and Casualty Company executed policy No. 11108, in which Mr. Orton Wood is named insured, and that policy, together with a money receipt, which is Plaintiff's Exhibit 8, and an identification, which is Plain-

tiff's Exhibit 7, and an invoice, which is Plaintiff's Exhibit 6, and another document which is identified as Plaintiff's Exhibit 9, and a form letter and which is identified as Plaintiff's Exhibit 10, were transmitted by the defendant company to E. E. Cronquist, Route 1, Longmont, Colorado, Mr. Cronquist having previously been connected with the defendant company as one of their agents but who at the time of the communication of August 8, 1947, had ceased to have that relationship. These documents were transmitted to Mr. Cronquist with a covering letter, which is identified as Plaintiff's Exhibit 2, dated August 8, 1946, containing instructions to deliver the policy to Mr. Wood and collect the premium, on the back of which letter identified as Plaintiff's Exhibit 2 Mr. Cronquist wrote a note to Mr. Orton Wood, the plaintiff,

"It is stipulated and agreed by and between the attorneys for the parties that the policy and these accompanying documents were sent by mail to Mr. Wood's home, that they were received at his home but that Mr. Wood, the plaintiff, had no knowledge that they were at his home or any other knowledge of the documents prior to the accident in question here.

"Now, can you people stipulate to those facts up to this point? Can you agree to those facts?

"Mr. White: Yes, Your Honor."

Mr. White, counsel for the defendant, admits in the foregoing stipulation that the defendant, National Farmers Union Automobile and Casualty Company, executed policy No. 11108, in which Mr. Orton Wood is named insured; and admits that such a policy, together with the enclosures referred to, were transmitted by the defendant company to E. E. Cronquist, Route 1, Longmont, Colorado.

Counsel for the defendant also admits that these documents were transmitted by the defendant to Mr. Cronquist with a covering letter, which is identified as Ex-

hibit 2, dated August 8, 1947. That letter is important. It reads as follows:

"August 8, 1947
"Mr. E. E. Cronquist
"Route 1
"Longmont, Colorado
"Dear Mr. Cronquist:

"We are enclosing Policy No. 11108, for Mr. Orton Wood, of Fleming, Colorado, together with a statement for the $17.50 due, which we have charged to your account. A charge memo is also enclosed for your own records.

"We have not received any remittance for this transfer from Amico. We did, however, receive a letter from the First National Bank, of Fleming, asking for an endorsement to the policy transferring cars, and enclosing the statement of premium due which we had mailed to Mr. Wood quoting the premium for transfer from Amico. The letter reads as if the Acco policy had already been written, and asked us to mail the transfer of cars endorsement to Mr. Wood.

"It is on the strength of the above letter that we have written the Acco policy, covering the new car. Will you get in touch with Mr. Wood, and collect and deliver? It does seem that he wants this policy.

"Very truly yours,
"R. E. Digerness
"Underwriting."

E. E. Cronquist, the addressee of that letter, mailed the policy and the accompanying documents to Mr. Wood's home in Fleming. He wrote Wood a letter on the back of defendant's letter, Exhibit 2. In that he says:

"Longmont, Colorado
"August 11, 1947
"Mr. Orton Wood
"Fleming, Colo.
"Dear Orton:

"I just received this letter from the Farmers Union Office, Denver, together with policy transferring from the Company which I wrote you in several

years ago. The National Farmers Union have their own Company now and I am sure you want to be a part of the Farmers Union organization. The 6 mo. premium is 7.50 on your new car and the 10.00 is a membership in the new company & returnable to you any time you don't need the insurance. As I will not be down that way for some time to see you I am inclosing the policy to you & will you please send your check direct to the Denver office and they will credit you for same. I am sending you copy of my letter which is self-explanatory.

"In case you paid your premium to the old company will you please mail this inclosed policy to the Denver office with an explanation to them and you can make a change at the next time your insurance expires. This policy is charged to me & I will appreciate your cooperation in replying direct to the home office, Denver.

"Sincerely yours,
"E. E. Cronquist."

One of the documents transmitted by the defendant to Cronquist, and by him to Wood, is Exhibit 6, which is the "invoice" for the premium on the policy and the membership fee. That "invoice" carries a notation typed upon it: "Charge: E. E. Cronquist," and underneath that statement, "R.M.F.U."

■ It is clear from the foregoing documentary evidence and the admissions of defendant's counsel at the pre-trial conference that defendant National Farmers Union Automobile and Casualty Company extended credit for the payment of the premium on this policy. The only conclusion that fairly can be drawn from the stipulation and the admissions of defendant's counsel is that the defendant sent the covering letter, Exhibit 2, and the enclosures to Cronquist. That letter states that the premium is charged to Cronquist's account; that a charge memo is enclosed for his own records; that a letter had been received from the bank at Fleming, Exhibit 13, enclosing "the statement of premium due which we had mailed to Mr. Wood quoting the premium for transfer from Amico (American Motorists Insurance Company)"; that "it is on the strength of the above letter that we have written the Acco (Automobile and Casualty Company) policy, covering the new car"; that "it does seem that he wants this policy," and asks, "Will you get in touch with Mr. Wood, and collect and deliver?"

Moreover, the enclosed "invoice," Exhibit 6, shows the charge to Cronquist.

Unless credit was extended for the payment of the premium, plaintiff cannot recover, because it is admitted by plaintiff's counsel that no premium was paid by plaintiff Wood on the Amico policy to keep the policy in force beyond July 21, 1947, and that the policy with Amico was not in force on September 3, 1947, the date of the accident. And it is also admitted by plaintiff's counsel that plaintiff never paid the $10 membership fee nor the $7.50 premium to the defendant, per the "invoice".

Those admissions appear in the transcripts of the pre-trial conferences of November 7, 1952, and June 11, 1951, respectively.

■ It is not unfair to hold defendants counsel to his admissions referred to above, in the pre-trial conference transcript of the June 11, 1951, proceedings, pages 21, 22, and pages 10, 11, for the reason that as the record of the trial on Tuesday, December second, yesterday, will show, defendant's counsel, Mr. White, insisted that plaintiff was bound by his admissions and stipulations in the same conference. Indeed, Mr. Steele, co-counsel for defendant, stated at the bench that counsel must be held to be so bound, otherwise there is no purpose to be served at the pre-trial conference. With that I entirely agree.

(The proceedings referred to above are as follows.)

"The Court (In conference at the bench): This is the transcript of proceedings in the trial to the Court of this matter (June 11, 1951, page 26). Mr. White says: 'Could we divide that up and ask whether he paid the ten dollars for membership fee and then paid the $7.50?" And The Court said: 'Did he

ever pay the ten dollars membership fee?'

"Mr. Austin: No.

"The Court: Did he ever pay the $7.50?

"Mr. Austin: No, not on this one.

"Mr. Tinsley: He didn't pay that statement, in other words.

"The Court: All right, then it is stipulated that the plaintiff never paid a ten dollar membership fee, nor the additional $7.50, which are shown on the statement which is identified as Plaintiff's Exhibit 6, and in a letter to Cronquist which is identified as Plaintiff's Exhibit 2."

"The Court: Now, that is agreed to, I assume, isn't it?

"Mr. Tinsley: As I recall, Your Honor, at this latest pre-trial conference it superseded everything that had taken place before.

"The Court: No, not stipulations and agreements of counsel.

"Mr. Tinsley: We've gone into the matter of stipulation all through this trial.

"The Court: As a matter of fact, there isn't any question in this case that Mr. Wood paid the ten dollar membership fee or that he paid the $7.50.

"Mr. Tinsley: We haven't introduced any claim to that effect.

"The Court: As a matter of fact, he testified he didn't. Now, I'm not going to let you out of that stipulation in this matter.

"Mr. Tinsley: What we object to is reading these proceedings to the jury, Your Honor.

"The Court: Well, I'm not going to permit the reading of what the Court had to say here. I don't know; I haven't read it. I don't know what the Court has been saying in this case.

"Mr. White: I'm not trying to read all the proceedings. I don't need to say all the Court said, if that helps; but that was the stipulation.

"Mr. Tinsley: We don't understand that the matters at the pre-trial con-

ference are matters in evidence for the jury at all.

"Mr. Steele: What's the purpose of the pre-trial conference then?

"The Court: Mr. Tinsley, the Court isn't going to listen to you on that. The purpose of the pre-trial conference is to clear up the issues and get agreements where we can, and we are going to hold you to that stipulation."

The foregoing statement of the facts which I have now made is based upon (a) the stipulations and admissions of counsel for the respective parties, in the record of these proceedings; and (b) the documentary evidence that has been received in this record. No question, therefore, arises with respect to these matters that is triable by right to a jury. I shall speak of the question of damages in a moment.

A reading of the prayer to the first cause of action in this complaint discloses that plaintiff here seeks a declaratory judgment, "that this Court adjudge and determine the rights, duties and obligations of the parties hereto under the terms of said insurance policy, and that further, said Court order and direct the defendant herein to pay and satisfy the judgment against the plaintiff, as hereinabove referred to, and such other and further relief as to the Court may seem just and proper."

And the prayer to the second cause of action in this complaint discloses that plaintiff seeks a declaratory judgment, that "your plaintiff prays for an order of this Court adjudging and determining the duties, obligations and liabilities of the parties hereto under the terms of said policy of insurance, and for the further order of this Court, ordering and directing the defendant herein to proceed to defend your plaintiff herein against the actions now pending against him as a result of the accident referred to, or such further or other actions as may hereafter arise as a result thereof, and further for the order of this Court, ordering and directing the defendant herein to pay within the limits of liability imposed by said policy of insurance, any judgment or judgments that have been or may be secured against your plaintiff herein

in any action growing out of said accident, above referred to, together with such other and further relief as to the Court may seem just and proper."

■ Whether or not a party to a suit for a declaratory judgment is entitled as a right to have the issues submitted to a jury turns on the same considerations as in any other civil action. Rule 57 of the Rules of Civil Procedure, 28 U.S.C.A., provides:

"The procedure for obtaining a declaratory judgment pursuant to Title 28, U.S.C., § 2201, shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39."

Rule 38(b) of the Rules of Civil Procedure provides:

"Demand. Any party may demand a trial by jury of any issue triable of right by a jury by serving" notice for demand.

I emphasize the language, "any issue triable of right by a jury." Certainly there is no issue of fact triable as a right by jury where the fact is stipulated to or admitted by counsel in the record; nor is there an issue of fact triable by jury as of right where, on documentary evidence—and I emphasize the words *documentary evidence* —the question is whether or not there is a contract. The interpretation of the writings is for the Court.

In this case there was no communication between Mr. Wood, the plaintiff, and the defendant insurance company except as it is found in the writings which are in evidence in this record. The background circumstances, other than those found in the writings, are either settled by the stipulations and admissions of the parties, are not in controversy, or are supported by uncontroverted evidence in the record. That being the case, what is it that must be decided on the basis of these documents? Questions of construction with regard to written documents under these circumstances are questions of pure law.

What meaning the writer intends to convey would be a question of fact. Or, if we are getting at what the recipient understood, that would be a question of fact, too.

But in this instance the real problem is, how ought the recipient to have understood the writing, with what meaning is the writer chargeable? Where there is no other specific rule, the courts apply the reasonable man test—what Mr. Justice Holmes called "the reasonable user of English". Of course, there is no such individual; and when the judge takes a piece of non-technical English and says it means a certain thing because that is what it would mean to the reasonable user of English, he is determining the meaning to which the writer ought to be bound, and what the recipient ought to have understood.

■ What really then is the question to be decided in this case? It is not, what did the defendant insurance company mean when it sent to plaintiff Wood the letter, Exhibit 11, soliciting him to insure in the defendant company? And it is not, what did Mr. Wood understand from that letter? Fundamentally, here the issue is, with what meaning is the defendant insurance company chargeable? And, how ought Wood to have understood that letter?

Those, it is obvious, are questions of law. To submit them to a jury would be error. To decide that question is to lay down a standard of conduct, to apply a principle of law, to attach to these writings a legal consequence.

The question is not, what did plaintiff Wood mean by the letter and enclosure, Exhibits 13 and 14, which he had his banker, Mr. C. L. Lippitt, send to the defendant company? And it is not, what did defendant company understand Wood meant by those writings? Rather, the question is, with what meaning is plaintiff Wood chargeable by those writings? And what meaning ought the insurance company to have attached to them and understood?

And, moreover, the question is not, what did the defendant company mean by its letter of transmittal, together with the enclosures, sent to Mr. Cronquist?—(Exhibits 1, 2, 6, 7, 8, 9, and 10.)

Nor is it, what did Mr. Cronquist and Mr. Wood understand? The question is, rather, with what meaning is the defendant company chargeable from those writings,

and what ought Mr. Cronquist and Mr. Wood to have understood?

Those are all questions of law for the Court to decide upon the undisputed language in those writings and under the admitted or uncontroverted facts in this record.[1]

■ It is the judgment of this court that defendant's letter to Mr. Wood, Exhibit 11, undated but sent to him about July 1, 1947, as defendant's witness testified, with premium renewal notice for his auto·insurance in the American Motorists Insurance Company enclosed, and with that "invoice", exhibit 14, for Farmers Union insurance also enclosed, was a solicitation for an offer by Mr. Wood to take out auto insurance with the defendant company.

The second paragraph of that letter reads as follows, and this letter is signed by Mr. C. E. Huff, general manager; it is on the National Farmers Union Automobile and Casualty Company letterhead. It says: "Dear Policyholder:"—and the second paragraph of the letter says:

"Now that we have our own company you will almost certainly want it to carry your insurance beginning with this renewal date. To make this easy for you, we are enclosing a premium statement for similar coverages in National Farmers Union Auto and Casualty Company. It provides for 10, 20, and 5 on Public Liability instead of the usual 5, 10, and 5."

That is the meaning with which defendant is chargeable. That is to say, the defendant's letter to Mr. Wood, Exhibit 11, together with the enclosure, the "invoice", exhibit 14, enclosed with that letter, was a solicitation for an offer by Mr. Wood to take out auto insurance with the defendant company. That is the meaning with which defendant is chargeable; and, moreover, that is how Wood ought to have understood it.

Both of those questions are questions of law, and both of those questions I am deciding and shall not leave to the jury.

■ Furthermore, it is the judgment of this court that the letter sent by C. L. Lippitt, President of the First National Bank of Fleming, Colorado, Exhibit 13, read with the enclosures which he sent in with his letter, Exhibit 14, both sent to the defendant company at plaintiff's request, constitutes an offer by plaintiff in response to defendant's solicitation that the plaintiff take insurance in defendant's company.

That is the meaning with which both parties are chargeable, and that is what the defendant ought to have understood.

■ Furthermore, it is the judgment of this court that the defendant company accepted plaintiff's offer to insure in defendant's company and put the coverage under the policy presently in effect. Defendant did that by sending to Cronquist the letter of transmittal, Exhibit 2, enclosing policy, Exhibit 1; by enclosing invoice showing charge of premium to Cronquist (Exhibit 6); by enclosing identification, Exhibit 7; by enclosing money receipt, Exhibit 8; by enclosing Exhibit 9 and by enclosing Exhibit 10. Of Exhibit 10 I shall read the opening sentence. This is on the same National Farmers Union letterhead, Automobile and Casualty Company, signed by Mr. Donald K. Smith, Underwriting Department, addressed to:

"Mr. Orton Wood
"Fleming, Colorado
"Dear Mr. Wood:
    "We have received your application for automobile coverage with our company, and we wish to welcome you into the membership of our Farmers Union cooperative company."

And then there are other matters in the letter.

Now, that such letter of transmittal, Exhibit 2, together with the enclosures I have referred to, is an acceptance of plaintiff's offer to insure in the defendant's company is, in the judgment of this court, the meaning with which the defendant is chargeable on those writings, and that is what plaintiff ought to have understood from them. Those are the questions to be decided. Those are questions of law; they are not jury questions.

1. Wigmore on Evidence, 3rd Ed. Sec. 2556.

█ Now there are two or three other matters to which we should perhaps address ourselves. One such further matter is, a word should be said about the delivery of the policy. As the Court understands the law, delivery is a legal concept which constitutes (a) an act plus (b) a requisite intent. The defendant is charged with the intent from these writings. The act of sending the acceptance of the policy and other enclosures charging the premium to Cronquist suffices as an act manifesting such intent.

█ Another matter that should be mentioned, as already indicated, defendant's counsel has admitted or stipulated that it was defendant's company which executed the policy, which transmitted it to Cronquist with the letter of transmittal. It is the judgment of this court that such admission settles any issue as to the authority of employees of the defendant to do those acts and to extend credit for the payment of the premium.

█ Next, there is a matter about which I ought to add an additional word. Whether the defendant is chargeable with the extension of credit on the writings, and whether plaintiff should have so understood the writings, are also questions for the court and not for the jury, for the reasons that I have heretofore elaborated. The policy of insurance was executed, delivered, and credit was extended by the National Farmers Union Automobile and Casualty Company, the defendant in this case. The policy was in effect on September 3, 1947, and covered Mr. Orton Wood's loss.

█ Now, as to the issue of damages, which is the only remaining matter, I think, undisposed of. It appears from the transcript of the proceedings of November 7, 1952, pages 6a and 6b, particularly on 6a, that the defendant's counsel admitted and stated that he had no objection to the admission in evidence of the three judgments in the Kansas court; so there can be no issue for the jury on that. The only issue which I think in this case is a jury issue is what, if any, amount the plaintiff should recover as reasonable attorneys' fees, and what, if any, amount the plaintiff is entitled to recover as court costs.